# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

Keon S. Hill, )
    Plaintiff, )
)
v. ) 1:12cv656 (TSE/TRJ)
)
Officer Carter, )
    Defendant. )

## MEMORANDUM OPINION

Keon S. Hill, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging in pertinent part that he was subjected to excessive force upon his arrest by defendant Officer Carter of the Petersburg Police Department.[1] The matter is now before the Court on defendant's Motion for Summary Judgment, filed December 21, 2012. Defendant simultaneously filed a supporting memorandum of law with exhibits, and provided plaintiff with the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). By Order dated January 14, 2013, plaintiff's letter/motion for an extension of time to respond to defendant's motion was granted, and plaintiff has now filed his reply, captioned as a Motion to Objections. Dkt. 38. After careful consideration of defendant's exhibits and plaintiff's reply, defendant's Motion for Summary Judgment must be granted, and summary final judgment must be entered in his favor.

---

[1] In the initial complaint, plaintiff also asserted a second claim of deliberate indifference to his serious medical needs. After plaintiff was given an opportunity to particularize and amend his allegations, that claim and all associated defendants were dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915A on September 11, 2012. Dkt. 12. The action now remains pending solely on plaintiff's claim of excessive force against Officer Carter.

1

## I. Background

The following material facts are uncontested. On March 19, 2012, plaintiff was arrested by officers of the Petersburg Police Department after being charged with acts of domestic violence. Buffkin Aff. ¶ 3. The officers who participated in plaintiff's arrest were Sergeant Christopher Buffkin, Officer Leslie Arvidson, and Officer Thomas Carter. Arvidson Aff. ¶ 3. Sgt. Buffkin walked down Kirkland Street searching for plaintiff, hoping to convince him to surrender. Buffkin Aff. ¶ 3. However, Officer Carter apprehended plaintiff first, and observed that plaintiff appeared to be inebriated on either drugs or alcohol. Carter Aff. ¶ 4. Plaintiff acted combative, so Officer Carter placed him face down on the grass and handcuffed him in the back. Id. Carter started to help plaintiff get up, but plaintiff became more combative, so Carter placed plaintiff in leg irons. Carter Aff. ¶ 5. After the leg irons were secured, Officer Carter brought plaintiff to his feet, holding plaintiff's upper arm and supporting his lower back so plaintiff could rock up onto his feet. Id. When plaintiff was on his feet, Officer Carter started moving him toward the patrol car, but plaintiff again became more combative. Id. Officer Arvidson arrived on the scene and came to assist Carter, and plaintiff tried to kick both officers. Id. Sgt. Buffkin instructed the officers to move away from the patrol car and to take plaintiff down in the grass, and the officers complied. Id. At that juncture the officers called to request van transportation for plaintiff, as they feared that plaintiff would injure himself or do damage to the vehicle if he were placed in the patrol car. Id. Hill remained on the ground until the van arrived. Id. When it did, Officers Carter and Arvidson rolled plaintiff onto his back and each took an upper arm to help Hill to his feet, and he was loaded into the van. Carter Aff. ¶ 6. Once Hill was in the van, Sgt. Buffkin and Officer Arvidson had no further contact with him. Buffkin Aff. ¶ 8;

Arvidson Aff. ¶ 7. At no time did plaintiff complain to Buffkin or Arvidson that he had sustained any injury, nor did either officer observe any injury to plaintiff. Buffkin Aff. ¶ 7; Arvidson Aff. ¶ 8.

Officer Carter followed the van to the Magistrate's office, where he observed plaintiff curse the Magistrate. Carter Aff. ¶ 7. After the commitment order was signed, Officer Carter took plaintiff to the Petersburg City Jail. Carter Aff. ¶ 8. Carter attests: "At no time did Hill complain of injury to his hand or wrist. Had he done so, I would have taken him to the hospital since the Jail will not accept any inmate who has a medical complaint until he has received medical treatment and obtained clearance for acceptance at the Jail." Carter Aff. ¶ 9.

Major Yerby of the Petersburg Sheriff's Office also has supplied an affidavit stating that plaintiff was brought to the Petersburg City Jail at 11:35 p.m. on March 19, 2012, and that "[i]f Hill had complained of any medical condition, the Petersburg Police would have been told to take him to the hospital first and receive clearance from the hospital before he would be admitted to the Jail." Yerby Aff. ¶ 3. This is because "[i]t is the policy of the Petersburg Sheriff's Office that no prisoner will be taken into the Petersburg City Jail ... as an inmate if he complains of any medical condition, unless or until he has been cleared by a hospital." Yerby Aff. ¶ 2. Plaintiff was released from the Petersburg Jail at 1:45 a.m. on March 20, 2012 and sent to the Riverside Regional Jail. Yerby Aff. ¶ 4.

As stated above, plaintiff has filed a response to defendants' summary judgment motion. Captioned as a Motion to Objections, plaintiff's response is unsworn and does not subject the author to the penalty of perjury for any misstatements. Therefore, it would be insufficient to defeat defendants' summary judgment request under any circumstances. Fed. R. Civ. P. 56(e);

see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion); Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991) (verification based on personal knowledge or information and belief is insufficient to oppose a motion for summary judgment because it avoids the possibility of perjury). Here, however, plaintiff's response does no more than reiterate many of defendants' assertions, so it would not create a genuine issue of material fact even had it been sworn.[2]

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable

---

[2]For example, plaintiff admits that he "appeared to be inebriated;" he was "combative" with the defendants; "at no time did [he] complain of injury to his hand or wrist;" and "had he done so Carter would have taken him to the hospital." Dkt. 38.

4

to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts for which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

"The Fourth Amendment 'governs claims of excessive force during the course of an arrest.'" Robles v. Prince George's County, 302 F.3d 262, 268 (4th Cir. 2002) (quoting Riley v. Dorton, 115 F.3d 1159, 1161 (4th Cir. 1997)).[3] "The 'reasonableness' inquiry in an excessive force case [governed by the Fourth Amendment] is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989) (citations omitted). Further, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id. at 396

---

[3]Claims concerning the use excessive force can arise under the Fourth, Fifth, and Eighth Amendments, depending on their particular factual contexts. Here, where plaintiff alleges that he was subjected to the use of excessive use of force upon arrest, his claim is grounded solely in the Fourth Amendment. See Kidd v. O'Neil, 774 F.2d 1252 (4th Cir. 1985).

(internal citation omitted). The extent of injury suffered by the arrestee is relevant, both because it may suggest whether the use of force could plausibly have been thought necessary in a particular situation, Whitley v. Albers, 475 U.S. 312, 321 (1986), and because it may provide some indication of the amount of force applied. Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175, 1178 (2010) (rejecting the notion that an excessive force claim involving only *de minimis* injury is subject to automatic dismissal). Nonetheless, "[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts." Id.. at 1178-79. A district court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985) (citing United States v. Place, 462 U.S. 696, 703 (1983)). The outcome of this balancing test necessarily depends on the facts and circumstances of the particular case." Martin v. Gentile, 849 F.2d 863, 868 (4th Cir. 1988).

In addition, in Justice v. Dennis, 834 F.2d 380, 383 (4th Cir.1987), judgment vacated, 490 U.S. 1087 (1989), the Fourth Circuit approved jury instructions which defined the standard for evaluating a claim of excessive force perpetrated by a police officer as whether the force was so "brutal, demeaning and harmful as literally to shock the conscience of a court." Other factors to be considered in an excessive force claim are " 'the need for the application of the force; ... the relationship between the need for the force and the amount of force used; ... [and] the extent of injury inflicted.' " Id.; see also, Bailey v. Turner, 736 F.2d 963, 965 (4th Cir.1984) (framing test as whether use of force "shocks the conscience" or has been applied "maliciously and sadistically for the purpose of causing harm").

No extended discussion is necessary in this case to conclude that plaintiff's Fourth

Amendment rights were not violated by Officer Carter. It is uncontradicted that when defendant encountered plaintiff on the night in question, plaintiff appeared to be inebriated, and as events unfolded he became increasingly combative toward defendant and the other officers at the scene. Therefore, Officer Carter's actions of restraining plaintiff in handcuffs and leg irons and taking him to the ground to await transport clearly were 'objectively reasonable' in light of the facts and circumstances he faced. Graham, 490 U.S. at 397; see generally, Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999) ( "[W]e must accord due deference to an officer's efforts to retrain a detainee when faced with a dynamic and volatile situation ....").

As to the subjective component of the excessive force analysis, it is readily apparent that Officer Carter did not apply force "maliciously and sadistically for the purpose of causing harm." Cf. Bailey, 736 F.2d at 965. To the contrary, the undisputed evidence indicates that plaintiff never complained to the officers at the scene about any injury to his hand or wrist, nor did any of the officers notice any such injury. Further, the fact that plaintiff was booked directly into the Petersburg Jail indicates convincingly that no injury was present, since jail policy dictates that an arrestee who complains of any medical condition must be cleared by a hospital before he can be taken into the jail. Under such circumstances, no evidence suggests the Officer Carter applied an unnecessary amount of force in retraining plaintiff, much less that force was applied in such a brutal or sadistic manner that plaintiff's constitutional rights were impinged. Cf. Justice, 834 F.2d at 383. Considering the totality of the circumstances in the light more favorable to the plaintiff, he has failed to demonstrate a genuine issue of material fact as to whether defendant's actions in dealing with his disruptive behavior were sufficiently egregious to violate the Fourth Amendment. That being so, entry of summary judgment for defendant Officer Carter is

appropriate.

## IV. Conclusion

For the foregoing reasons, the Motion for Summary Judgment of defendant Officer Carter must be granted, and summary final judgment must be entered in his favor. An appropriate Order shall issue.

Entered this 26th day of February 2013.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge